

IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND

Artists & Framers, Inc.
9130-E Red Branch Rd.
Columbia, Maryland 21045

and

Doris S. Powell, Ph.D.
1101 Frederick Road
Catonsville, Maryland 21228

Plaintiffs,

v.

Lease Finance Group, LLC
233 N. Michigan Ave.
Suite 1800
Chicago, Illinois 60601

SERVE ON:

The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Defendant.

Case No. 13 C 10 84477

FILED 2010 OCT 14 AM 8: 23

## COMPLAINT

Plaintiff, Artists & Framers, Inc. ("Artists & Framers"), complains and alleges as follows.

## PARTIES

1. Artists & Framers is a Maryland corporation in good standing. It has been in the business of custom art framing for more than twenty years. Artists & Framers operates a retail store on Red Branch Road in Columbia, Maryland, and, until recently, operated a second store in the Federal Hill neighborhood of Baltimore.

2. Doris S. Powell, Ph.D. is part owner of Artists & Framers. She lives in Catonsville, Maryland.

3. Defendant, Lease Finance Group, LLC ("LFG") is a foreign limited liability company. It has no resident agent in Maryland. Upon information and belief, it is organized under the laws of Delaware and has its primary offices in Illinois and New York.

4. Pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 6-103, and 6-202, jurisdiction and venue are proper in the Circuit Court for Howard County, Maryland. This Court may exercise personal jurisdiction because the causes of action asserted arise from the Defendant's actions through its agents in Maryland; specifically, Defendant transacted business, contracted to provide services, and caused tortious injury in Maryland. Venue is proper because Defendant has no principal place of business in Maryland, and Plaintiff's principal place of business is in Howard County, Maryland. The tort of negligent misrepresentation also arose from conduct in Howard County, Maryland.

**FACTS**

5. In late March or early April of 2009, a person claiming to represent J.P. Morgan Chase contacted Artists & Framers by telephone. The caller explained that Artists & Framers could save money on credit card processing services and credit card processing equipment. He indicated that Artists & Framers would be contacted by another person with more information.

6. Artists & Framers received a follow-up call from a woman who introduced herself as Samantha Malm. Ms. Malm referenced the earlier call from J.P. Morgan Chase and made an appointment to visit Artists & Framers' Columbia store on April 15, 2009.

7. Ms. Malm appeared as scheduled in the Columbia store and said that she was associated with a company called Payment Systems. Ms. Malm provided a business card indicating her title as an "Independent Account Executive" with Payment Systems, with an address in Carlsbad, California.

8. Ms. Malm met with Dr. Powell, an owner of Artists & Framers, who was eighty-one years of age at the time. Ms. Malm produced a blank "Payment Systems" form, which she completed by hand during the course of the meeting to estimate the potential savings from this new offer. This form included information for both credit card processing services and equipment. It had been Artists & Framers experience that credit card processing services and equipment are normally provided as a package deal.

9. Ms. Malm indicated, consistent with the form she was completing by hand and consistent with Artists & Framers experience, that processing services and equipment were being offered as a package deal. Dr. Powell asked how the processing fees could be so low, to which Ms. Malm responded that the low rates were offset by the relatively high rate charged for the equipment. Ms. Malm said nothing at all suggesting that a second company or a second contract would be involved in the provision of equipment.

10. Dr. Powell explained that Artists & Framers must be free to cancel because the Baltimore location of Artists & Framers was under financial strain due to the economic recession and may need to close its doors. Ms. Malm said that she could "take care of that." At Dr. Powell's request, Ms. Malm placed a call to her manager to verify what she had told Dr. Powell, specifically, that Artists & Framers could in fact cancel the deal. Ms. Malm's sales manager further stated that Artists & Framers could cancel if rates increased.

11. At no time did Ms. Malm state that any distinction existed between Artists & Framers' right to cancel the credit card processing service and its right to cancel the equipment. At no time did she suggest that she was working for the benefit of a second company that would supply the equipment under a second contract, separate from the contract for processing services. As Artists & Framers would later learn, equipment and processing services were to be provided by different companies under distinct terms and conditions that were never addressed or even acknowledged by Ms. Malm.

12. Artists & Framers later learned that Ms. Malm made numerous false statements and omitted various material facts. Ms. Malm said that cancellation fees charged by Artists & Framers' existing credit card processing and equipment company would be reimbursed. Despite repeated demands, those fees were never reimbursed.

13. Ms. Malm told Dr. Powell that certain discounted rates would apply, and recorded such rates on the handwritten document attached hereto as **Exhibit A**. The actual rates were often inconsistent with and higher than the rates promised, and were effectively raised across the board in late 2009 when an additional $75 annual fee was added.

14. Ms. Malm gave no indication that an extra $4.95 monthly charge would be incurred if the credit card equipment was not covered by insurance. When Artists & Framers learned of the insurance requirement and related charge, it immediately sent proof of insurance coverage. The extra fee nonetheless continued to be withdrawn from the Artists & Framers account on a monthly basis for several more months.

15. Relying upon Ms. Malm's representations, Dr. Powell accepted the offer. Ms. Malm presented two copies of a form called "Payment Systems Merchant Application and Agreement," one for each Artists & Framers store. Ms. Malm and Dr. Powell discussed and completed these forms. They contained no provisions concerning a minimum number of years, a policy barring cancellation, or even an early cancellation fee.

16. Artists & Framers would later learn that these forms were only applicable to the credit card processing service, and not to the equipment.

17. Ms. Malm presented the forms applicable to the equipment, which are at issue in this litigation, as though a mere formality or an aside. She presented these forms without discussion and in such a manner that the top portion of each was concealed by other pieces of paper. The visible portions of these forms were illegible, with the ink appearing smeared and most of the words completely obliterated. Believing that the first set of forms, which had been reviewed and discussed, contained the terms and conditions of the entire arrangement, Dr. Powell signed this second set of forms as presented, in her capacity as owner of Artists & Framers and in her personal capacity as guarantor.

18. Ms. Malm left the store without providing copies of the signed forms.

19. Subsequently, Artists & Framers received a letter from Defendant, LFG, a company to which Ms. Malm made no reference at all. The letter included a copy of two forms, one for each location, entitled, "NON-CANCELLABLE LEASE," bearing Dr. Powell's signature on behalf of Artists & Framers ("Lease Agreements"). Other than the title, written in boldface capital letters, the text of the documents was not legible. True and accurate copies of these forms as they were received from LFG are attached hereto as **Exhibits B and C**.

20. Dr. Powell has requested legible copies of the executed forms on numerous occasions, but none has been received. Had Dr. Powell been left with copies of these documents at the time of contract, or had legible copies been provided within a reasonable time, she could and would have taken immediate action to cancel and/or rescind.

21. Due to the effects of the economic recession, the Baltimore store of Artists & Framers closed on December 31, 2009. Artists & Framers faxed notification of this closure on December 18, 2009, seeking to exercise the right to cancel the processing services and equipment, consistent with the representations that were made by Ms. Malm to induce Artists & Framers to sign the Lease Agreements. Artists & Framers also sought information concerning how to return the equipment.

22. Dr. Powell received verification from her facsimile machine that her December 18, 2009 notification had been delivered to LFG. Receiving no response, Dr. Powell called LFG and was told that the letter was not received. Dr. Powell faxed it again on December 28, 2009, and also sent it by certified mail, return receipt requested, through the U.S. Postal Service. She again received delivery verification from her facsimile machine and, this time, from the U.S. Postal Service. There was no response. Dr. Powell called LFG and was told that neither the fax nor the postal delivery was received.

23. LFG nonetheless caused the Artists & Framers' bank account to be debited $100.63 for each store on December 28, 2009, reflecting charges for January 2010. Dr. Powell asked the bank to reverse those charges and eventually had to close the applicable accounts to stop the unauthorized withdraw of funds. In a January 8, 2010 letter, Dr. Powell informed LFG

that its charges for the Columbia store would be paid by check each month in the proper amount, and that Artists & Framers considered the Baltimore contract cancelled as of December 31, 2009.

24. On February 2, 2010, and again on April 28, 2010, LFG sent Artists & Framers an unsigned form response, eschewing all responsibility for the false statements made for its benefit by its agent Ms. Malm. The Lease Agreements that Artists & Framers signed, in reliance upon her false statements, inured to the benefit of LFG. LFG cannot enjoy the benefits of those contracts and simultaneously avoid responsibility for the misconduct that produced them.

25. Increasingly frustrated with this situation, and still unable to read the supposed provisions of the Lease Agreements, Artists & Framers exercised its right to cancel its contract for the Columbia store as well, by letter dated March 9, 2010.

26. On July 6, 2010, LFG sent a notice addressed to "Doris Powell," which began, "*Why are you making this so difficult? Could it be that you enjoy receiving numerous telephone calls, messages, reminders and invoices about the Past Due balance on your equipment lease?*" This same notice concluded, "*If you do not respond, we will have no alternative but to consider additional steps to enforce collection, possibly including reporting this debt to the Consumer Credit Reporting Agencies and seeking the assistance of an outside third party. Is this what you want?*"

27. On July 15, 2009, another LFG notice addressed to Doris Powell included these statements, "*Don't you understand that you signed a legal, binding, noncancellable Contract when you accepted your equipment? Don't you understand that this Contract makes you financially responsible for all lease payments? Don't you realize that this responsibility remains in effect, that it cannot be cancelled despite whatever has happened to the equipment or the business?*"

28. In addition to these written notices, Dr. Powell also received many phone calls on behalf of LFG in which the caller would refuse to identify him or herself, and would speak in a belligerent and outrageous manner.

29. LFG benefitted from the false statements and misconduct of Ms. Malm, having received the revenue associated with the Lease Agreements. LFG now threatens to enforce those Lease Agreements and seeks to disavow the deception based upon which they were executed.

**COUNT I – Intentional Misrepresentation**

30. Plaintiff incorporates paragraphs 1 through 29 as though fully set forth herein.

31. LFG, by and through its agent Samantha Malm, made false representations of material fact to Artists & Framers. Specifically, LFG asserted that the Lease Agreements could be cancelled.

32. LFG and its agent knew that this representation was false. The title of the Lease Agreement, which was intentionally concealed from Artists & Framers, was "NON-CANCELLABLE LEASE."

33. LFG and its agent made this false representation for the purpose of defrauding Artists & Framers and locking it into the type of long-term financial commitment that Artists & Framers expressly stated it must avoid.

34. Having received these false assurances verbally from LFG's agent who solicited the Lease Agreements, Artists & Framers requested that this agent verify with her manager that the representation was accurate. Receiving such additional assurance, Artists & Framers reasonably relied on these false statements.

35. LFG's actions in this regard were deliberate and malicious, and were well-calculated to deceive and extract money from Artists & Framers.

36. Artists & Framers suffered damages as a direct result of its reliance upon the misrepresentations.

37. Artists & Framers was induced to sign the Lease Agreements as the result of fraud.

38. Artists & Framers has been and remains willing to return to LFG the equipment that is the subject of the Lease Agreements.

39. Artists & Framers exercised the right to rescind and gave notice to LFG of its intent to rescind promptly upon discovery of the fraud. Artists & Framers did not treat the Lease Agreements as continuing obligations.

WHEREFORE, Artists & Framers demands that the Lease Agreements entered into by Artists & Framers and LFG be rescinded and that Artists & Framers be awarded the return of all amounts paid to LFG and punitive damages in the amount of one hundred thousand dollars ($100,000), plus interest, costs and such further relief as this Court may deem just and appropriate. In addition, Dr. Powell demands that her personal guaranty of the Lease Agreements be deemed rescinded and cancelled, for all purposes.

**COUNT II – Deceit**

40. Plaintiff incorporates paragraphs 1 through 39 as though fully set forth herein.

41. LFG's act of concealing the title and content of the Lease Agreements from Artists & Framers amounted to a failure to disclose material facts, which it had a duty to disclose.

42. LFG concealed these material facts from Artists & Framers by concealing the top portion of the forms, failing to leave a copy of the Lease Agreements with Artists & Framers at the time of the transaction, and by refusing to provide legible copies of the Lease Agreements, despite numerous requests. LFG, through its agents, engaged in such misconduct with the intent to deceive, knowing that Artists & Framers would not have signed the Lease Agreements had the title of the form been revealed or the text of the document been legible.

43. Artists & Framers reasonably relied on the representations of LFG's agent, who claimed to have verified the truth of her statements with her sales manager.

44. LFG's actions in this regard were deliberate and malicious, and were well-calculated to deceive and extract money from Artists & Framers.

45. Artists & Framers suffered damages as a direct result of this deceit.

46. Artists & Framers was induced to sign the Lease Agreements as the result of this deceit.

47. Artists & Framers has been and remains willing to return to LFG the equipment that is the subject of the Lease Agreements.

48. Artists & Framers exercised the right to rescind and gave notice to LFG of its intent to rescind promptly upon discovery of the concealment and LFG's intention not to honor the verbal and written representations made by its agents. Artists & Framers did not treat the Lease Agreements as continuing obligations.

WHEREFORE, Artists & Framers demands that the Lease Agreements entered into by Artists & Framers and LFG be rescinded and that Artists & Framers be awarded the return of all amounts paid to LFG and punitive damages in the amount of one hundred thousand dollars

($100,000), plus interest, costs and such further relief as this Court may deem just and appropriate. In addition, Dr. Powell demands that her personal guaranty of the Lease Agreements be deemed rescinded and cancelled, for all purposes.

**COUNT III – Negligent Misrepresentation**

49. Plaintiff incorporates paragraphs 1 through 48 as though fully set forth herein.

50. LFG falsely stated to Artists & Framers that the Lease Agreements may be cancelled, when in fact they could not.

51. LFG had a duty of care to Artists & Framers which required that it provide accurate information and not conceal material terms of the contracts.

52. LFG was at the very least negligent in making these false statements. A minimal level of care taken in training those agents whose job it was to call upon potential customers in their places of business, and who solicited contracts for the benefit LFG, would have resulted in such agents understanding that the Lease Agreements, by their terms, could not be cancelled.

53. It was LFG's intent that Artists & Framers act and rely upon the false statements, and it knew that Artists & Framers was in fact relying upon such false statements and would be damaged as a result.

54. Having received these false assurances verbally from LFG's agent who solicited the Lease Agreements, Artists & Framers requested that this agent verify with her manager that the representation was accurate. Receiving such additional assurance, Artists & Framers reasonably relied on these false statements.

55. Artists & Framers suffered damages as a direct result of its reliance upon the misrepresentations.

56. Artists & Framers was induced to sign the Lease Agreements as the result of negligent misrepresentation.

57. Artists & Framers has been and remains willing to return to LFG the equipment that is the subject of the Lease Agreements.

58. Artists & Framers exercised the right to rescind and gave notice to LFG of its intent to rescind promptly upon discovery of the negligent misrepresentations. Artists & Framers did not treat the Lease Agreements as continuing obligations.

WHEREFORE, Artists & Framers demands that the Lease Agreements entered into by Artists & Framers and LFG be rescinded and that Artists & Framers be awarded the return of all amounts paid to LFG, with interest and costs, and such other and further relief as this Court may deem just and appropriate. In addition, Dr. Powell demands that her personal guaranty of the Lease Agreements be deemed rescinded and cancelled, for all purposes.

LAW OFFICES OF LESLIE A. POWELL

Leslie A. Powell
Paul D. Flynn
115 North Market Street
Frederick, Maryland 21701
(301) 668-7575
Counsel for Plaintiffs, Artists & Framers, Inc. & Doris S. Powell, Ph.D

Dated: October 13, 2010