IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARTISTS & FRAMERS, INC. et al. *
v. * Civil Action No. WMN-10-3330
LEASE FINANCE GROUP, LLC *

* * * * * * * * * * * * * * *

**MEMORANDUM**

This case was removed to this Court from the Circuit Court for Howard County. Shortly after removal, Defendant Lease Finance Group, LLC (LFG) filed a motion to dismiss. ECF No. 8. Plaintiffs opposed the motion but Defendant did not file a reply and the time for doing so has expired. The motion is therefore ripe. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be denied.

Plaintiff Doris Powell is the part owner of Plaintiff Artists & Framers, Inc. and is in her early eighties. Artists & Framers has been in the custom framing business for over 20 years and operates a retail store in Columbia, Maryland. Until December 31, 2009, Artists & Framers also operated a second retail location in Baltimore City.

In late March or early April of 2009, Powell received a telephone call from an individual who claimed to be associated

with J.P. Morgan Chase. The caller suggested that Artists & Framers could save money on credit card processing services and equipment. Shortly thereafter, an individual named Samantha Malm telephoned Powell, referenced the prior call and scheduled a sales appointment.

That appointment took place on April 15, 2009. Malm represented herself as an "Independent Account Executive" for a company called "Payment Systems." During the appointment, Malm explained that the credit card processing services and the equipment leasing were being offered as a package deal, with the relatively low processing fees being offset by relatively high equipment rental fees. Malm gave no indication, however, that the lease of equipment would involve a separate contract or that a separate company would be involved in supplying the equipment. It was Plaintiffs' previous experience that credit card processing services and equipment are provided by a single provider as a package deal.

In her discussions with Malm, Powell stressed that, in entering this agreement, Artists & Framers must be free to cancel the agreement at any time. Powell explained that the Baltimore location was experiencing difficulties because of the economic recession and might need to close its doors in the near future. Malm assured Powell she could "take care of that." Compl. ¶ 10. At Powell's request, Malm also telephoned her

manager to verify that the agreement could be canceled at any time.

Having received that assurance, Powell agreed to Malm's offer. Malm presented two copies of a form called "Payment Systems Merchant Application and Agreement," one for each Artists & Framers location. Malm and Powell discussed and completed these forms. Powell would later learn that these forms were only applicable to the credit card processing services.

Malm then presented two additional forms "as though a mere formality or an aside." Id. ¶ 17. These forms were presented in such a way that the top portions were concealed and the text that was visible was illegible. Believing that the first set of forms contained the terms and conditions of the entire agreement, Powell signed the second set of forms without first discussing them. Plaintiffs later learned that these forms were applicable to the leasing of the credit card processing equipment. Malm left the store without providing Powell with any copies of the signed documents.

After the meeting with Malm, Artists & Framers received a letter from Defendant LFG. In discussing the agreement, Malm had made no reference to LFG so this letter was the first Plaintiffs had heard of this entity. Included with the LFG letter were copies of the second set of signed forms. Only

through the receipt of these copies did Plaintiffs learn that the title of the documents, which had been concealed when Powell signed them, read "NON-CANCELLABLE LEASE." With the exception of that title, the copies of the signed documents were generally illegible. After receipt of the letter from LFG, Powell requested legible copies of these documents on numerous occasions but they were not provided.

On December 18, 2009, in anticipation of the closing of its Baltimore location, Artists & Framers faxed notification of the closure to LFG and sought to exercise its right to cancel the processing services and equipment for that location. Artists & Framers also sought information as to how to return the equipment. Plaintiffs received no response from LFG despite several additional attempts to contact it. On December 28, 2009, Artists and Framers' bank account was debited for January 2010 charges for both locations. Frustrated with LFG's refusal to recognize the cancellation of the lease agreement for the Baltimore location, Artists & Framers cancelled its contract for the Columbia location as well on March 9, 2010. Subsequently, Plaintiffs received written notices from LFG threatening "additional steps to enforce collection" and also received many belligerent telephone calls from agents of LFG.

Plaintiffs filed suit in the Circuit Court for Howard County on October 14, 2010, asserting a claim for Intentional

Misrepresentation (Count I); Deceit (Count II); and Negligent Misrepresentation (Count III). The gravamen of each claim is that LFG, through its agent, Samantha Malm, misrepresented or concealed the true terms of the lease agreement and thus induced Plaintiffs to enter into an agreement into which they would not have entered had they been told the actual terms. Defendant has moved to dismiss all three claims.

The standard for a Rule 12(b)(6) motion to dismiss should be well known. To survive such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Furthermore, unless the Court, in the exercise of its discretion, converts the motion to dismiss into one for summary judgment, matters outside the

pleadings will not be considered. See Fed. R. Civ. P. 12(d); Faulkner v. Beer, 463 F.3d 130, 134 (2nd Cir. 2006).

In moving to dismiss these claims, Defendant provides no citation to or discussion of the substantive law related to any of the claims brought by Plaintiffs. Instead, Defendant impermissibly challenges the factual allegations in the Complaint, improperly relies on material it submitted with its motion, and inappropriately invites the Court to draw inferences against Plaintiffs based upon Plaintiff Powell's educational achievements. Defendant also raises a somewhat fainthearted argument that Plaintiffs' claims are time barred.

In challenging the factual allegations in the Complaint, Defendant contends that "by the very terms stated throughout the Leases (which were signed and initialed in ten places by *Dr.* Powell), it is clear that the Leases were non-revocable and non-cancellable." Mot. at 3 (emphasis in original). As evidence of that proposition, Defendant points first to the title on both Leases as "clearly indicat[ing] the non-cancellable nature of those Agreement." Id. at 3-4. Defendant acknowledges, however, that Plaintiffs allege the titles were hidden from Powell when she signed the documents. Defendant next points to specific sections of the Lease dealing with their irrevocable nature, noting that these sections "are written in all capital letters"

and opining that they are "clearly and fully legible despite the allegations to the contrary." Id. at 4.

After reviewing the copies of the documents signed by Powell on April 15, 2009, which were attached to the Complaint, the Court would seriously challenge Defendant's counsel's claim that these are legible documents.[1] The vast majority of the smeared and blurry text on these pages is in what appears to be 6 point type or smaller. Capitalizing blurry text at that font size does not suddenly make it legible. While in some technical sense of the word these documents may be "legible" – that is, given enough time (and perhaps a magnifying glass) a diligent reader could make out many of the words - a finder of fact could also easily conclude that the documents were presented in a manner that reveals a clear intent to render them unreadable.

Defendant next relies on the content of a slightly more readable document that apparently was signed by Powell on April 22, 2009. This document, an "Installation Verification Report," signed by and initialed in several places by Powell does indicate that "THIS LEASE IS A SEPARATE AGREEMENT FROM MY PROCESSING AGREEMENT." Def.'s Mot., Ex. 1. This document, however, is not referenced in or attached to the Complaint and

[1] The Court is aware that the copies submitted with the Complaint could be several generations of copies removed from the originals signed by Powell and, to the extent relevant, the finder of fact would be evaluating the legibility of the actual documents signed by Powell.

it was not authenticated in any way. Thus, the Court will not consider this document in ruling on the motion to dismiss.

Defendant's most questionable argument relates to Plaintiff Powell's education. Responding to Plaintiffs' allegations that Powell was fraudulently induced to sign the lease agreements, Defendant counters that "*Dr.* Powell [] is a relatively sophisticated individual with a doctorate degree who owned not one, but two, custom art framing stores for over twenty years." Mot. at 2 (emphasis in original). Defendant proceeded to italicize the title "*Dr.*" for emphasis sixteen times in its seven page motion. Apparently, Defendant would have the Court infer that an individual in her early eighties with "relative sophistication" (whatever that designation might connote) and a doctoral degree cannot be defrauded. The Court declines to draw that inference.

Finally, Defendant points to a provision in the lease agreement that purports to establish a one year limitations period on all claims arising out of the agreement.[2] Asserting

---

[2] Defendant represents that the lease agreements contain the following provision:

> YOU SHALL COMMENCE ANY ACTION OR COUNTERCLAIM BASED IN CONTRACT, TORT OR OTHERWISE ARISING FROM OR IN ANY WAY RELATED TO THIS LEASE WITHIN ONE YEAR OF THE ACCRUAL OF THE CAUSE OF ACTION. NO SUCH ACTION MAY BE MAINTAINED WHICH IS NOT COMMENCED WITHIN THAT PERIOD.

Def.'s Mot. at 7 (citing Section 21 of the lease agreements).

that Plaintiffs' claims arose on April 22, 2009, "when any purported misrepresentations were made to them," Defendant concludes that the claims are time barred. Flaws in this argument abound and include, inter alia, the following.

First, the provision bars claims not commenced within one year of their "accrual." Fraud and misrepresentation claims typically accrue when the fraud or misrepresentation is discovered, not when it was made. Virtual Physical Center Rockville, LLC v. Phillips Med. Syst. N. America, Inc., 478 F.Supp.2d 840, 846 (D. Md. 2007). One could conclude from the allegations in the Complaint that Plaintiffs did not discover that Defendant would not honor the terms as presented by Malm until December 2009 when they attempted to cancel the lease for the Baltimore location and Defendant refused.

Defendant's limitations argument also fails at the motion to dismiss stage in that Plaintiffs allege that the lease agreement, including the limitations provision, was illegible. Assuming the truth of that allegation, Plaintiffs cannot be held to a provision that they could not read. For similar reasons, should it be proven that Plaintiffs were fraudulently induced to enter the agreement, the limitations provision contained therein would not be binding on them.

For these reasons, Defendant's motion to dismiss will be denied. A separate order will issue.

_______________/s/________________
William M. Nickerson
Senior United States District Judge

DATED: February 2, 2011